UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS A. SIMON,

        Plaintiff,

Case No. 1:12-cv-1202

Hon. Robert J. Jonker

v.

UNKNOWN WARR, *et al.*,

        Defendants.

                              /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Groom and Robertson (docket no. 15). The motion is unopposed.

**I.    Plaintiff's complaint**

Plaintiff commenced this action by filing a civil rights complaint in the Eastern District of Michigan. *See* Compl.(docket no. 1). Shortly thereafter, the case was transferred to this district. *See* Order Transferring Case (docket no. 4). This Court previously summarized plaintiff's claims as follows:

> Plaintiff Thomas A. Simon presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). He sues the following officers at IBC: (unknown) Groom, (unknown) Robertson, and (unknown) Warr. He also sues the Federal Bureau of Investigation (FBI), the Michigan State Police (MSP), the United States Attorney General (AG), and the Michigan Attorney General, Bill Schuette.
>
> Plaintiff alleges that on August 16, 2012, Officer Warr "threatened" Plaintiff and his family, saying, "Accidents do happen! One of your people can get shot in a hunting accident," and "You can always get stabbed." (Compl., docket #1, Page ID#4.)

> In addition, on August 26, 2012, Plaintiff was scheduled for a medical appointment in order to be weighed and to have his blood pressure and temperature taken. Officers Groom and Robertson were assigned to escort him from his cell to his appointment. When Groom and Robertson arrived at his cell, Plaintiff was having trouble walking and maintaining his balance, and he informed them of this. Plaintiff was placed in handcuffs, and Officer Groom held onto them to pull Plaintiff backwards out of the cell; however, the only way that Plaintiff could maintain his balance without falling was to stand sideways in the doorway of his cell. Officer Robertson allegedly "rushed" at Plaintiff "without warning" and "slammed" him into the door while yelling "back out of your cell." (*Id.* at Page ID#3.) Robertson's actions caused "severe bruising and excruciating pain." (*Id.*)
>
> Plaintiff sent complaints to the FBI, MSP, AG, and Defendant Schuette about the foregoing incidents, but they failed to investigate, to prosecute criminal charges, or to respond.
>
> According to Plaintiff, Defendants violated his right under the Eighth Amendment to avoid cruel and unusual punishment. Plaintiff also asserts that he has a right to request that the AG press criminal charges and a First Amendment right to petition the government for redress of grievances. He contends that the FBI and MSP engaged in gross negligence and violated Plaintiff's First Amendment right to "redress" of grievances. (*Id.* at Page ID#5.) Finally, Plaintiff contends that, because he is mentally handicapped and diagnosed with bi-polar disorder and schizophrenia, the conduct by the officers at IBC constitutes "vulnerable adult abuse" within the meaning of MICH. COMP. LAWS §§ 750.145, 750.149.
>
> Plaintiff seeks injunctive relief, including an order requiring the Michigan Attorney General and/or the AG to prosecute the complaints filed with them, and damages from each Defendant.

Opinion at pp. 2-3 (docket no. 10).

In screening plaintiff's complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, the court dismissed all defendants except for Groom and Robertson. *Id.* at p. 8; Order for partial dismissal (docket no. 11). Defendants Groom and Robertson have moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies.

2

## II. Defendants' motions for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

> significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### B. Failure to Exhaust

### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S.

4

at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not

receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's failure to exhaust

Plaintiff's claims against defendants Grooms and Robertson arise from events which allegedly occurred in August 2012. However, there is no evidence that plaintiff exhausted a grievance with respect to these claims. MDOC records reflect that plaintiff last exhausted a claim by filing a step III appeal in July 2008, more than four years *before* the alleged incidents occurred. *See* Affidavit of Richard Russell at ¶ 17 (docket no. 16-3); MDOC Prisoner Step III Grievance Report (docket no. 16-4). Based on this record, plaintiff did not properly exhaust a grievance against the defendants Groom and Robertson. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants' motion for summary judgment should be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Groom and Robertson (docket no. 15) be **GRANTED** for failure to exhaust administrative remedies and that this action be **DISMISSED**.


Dated: February 4, 2014   /s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　HUGH W. BRENNEMAN, JR.
　　　　　　　　　　　　　United States Magistrate Judge

6

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).